JS 44 (Rev. 08/16) - TXND (Rev. 12/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Frigate Enterprises, LLC

**DEFENDANTS**

TRINITY LAND AND MINERALS, LP, CASTLE ENERGY SERVICES, LLC, JOSEPH P. DEWOODY, MICHAEL P. DEWOODY, RYAN M. HAGGERTY

**(b)** County of Residence of First Listed Plaintiff    Collin County, Texas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Tarrant County, Texas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael K. Hurst, Esq.
LYNN PINKER COX & HURST, LLP
2100 Ross Ave., Suite 2700, Dallas, TX 75201; Tele.: 214-981-3800

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. 78j(b) and 17 C.F.R. 240.10b-5.
Brief description of cause:
Federal and Texas Securities Fraud.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
05/12/2017

SIGNATURE OF ATTORNEY OF RECORD
/s/ Michael K. Hurst

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)  County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)  Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.  Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.  Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.  Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.  Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **FRIGATE ENTERPRISES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. _____** |
| | § | |
| **TRINITY LAND AND MINERALS, LP,** | § | |
| **CASTLE ENERGY SERVICES, LLC,** | § | |
| **JOSEPH P. DEWOODY, MICHAEL P.** | § | |
| **DEWOODY, RYAN M. HAGGERTY,** | § | |
| | | |
| **Defendants.** | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Frigate Enterprises, LLC ("Plaintiff" or "Frigate") files its *Original Complaint* against Trinity Land and Minerals, LP ("Trinity"), Castle Energy Services, LLC ("Castle Energy"), Joseph P. DeWoody ("DeWoody"), Michael P. DeWoody ("Michael DeWoody"), and Ryan M. Haggerty ("Haggerty") (collectively, "Defendants"), showing as follows:

### I.    SUMMARY OF CLAIMS

Plaintiff sues for violations of the Federal and Texas securities laws, as well as for claims of fraud/fraudulent inducement, fraud by nondisclosure, statutory fraud, breach of fiduciary duty, and civil conspiracy. This lawsuit arises out of Trinity and DeWoody brokering a sale of oil and gas interests, which constituted unregistered securities, through a deal that Trinity and DeWoody put together, sourced, and participated in, all while making material misrepresentations to Plaintiffs about the investment and its financial and production performance.

## II.    PARTIES

1.    Plaintiff Frigate Enterprises, LLC ("Frigate") is a Texas limited liability company maintaining its principal place of business in Collin County, Texas.

2.    Defendant Trinity Land and Minerals, LP ("Trinity") is a Texas limited partnership maintaining its principal place of business in Tarrant County, Texas.  Trinity may be served with process through its registered agent Castle Energy Services, LLC at its principal office, 309 W. 7th Street, Suite 500, Fort Worth, Texas 76102.

3.    Defendant Castle Energy Services, LLC ("Castle Energy") is a Texas limited liability company maintaining its principal place of business in Tarrant County, Texas.  Castle Energy is listed as the general partner of Trinity.  Castle Energy may be served with process through its registered agent Pendragon Oil, LLC, at its principal office, 309 W. 7th Street,  Suite 500, Fort Worth, Texas 76102.

4.    Defendant Joseph DeWoody ("DeWoody") is a natural person and resident of Texas and appears to be listed as a general partner of Trinity and as manager and director of Castle Energy.  He may be served with process at 309 W. 7th Street, Suite 500, Fort Worth, Texas 76102, or at his residence at 3724 Hamilton Avenue, Fort Worth, Texas 76107, or wherever he may be found.

5.    Defendant Michael P. DeWoody ("Michael DeWoody") is a natural person and resident of Texas and appears to be listed as a general partner of Trinity and as manager and director of Castle Energy.  He may be served with process at 309 W. 7th Street, Suite 500, Fort Worth, Texas 76102, or at his residence at 3724 Hamilton Avenue, Fort Worth, Texas 76107, or wherever he may be found.

6.      Defendant Ryan M. Haggerty ("Haggerty") is a natural person and resident of Texas and appears to be listed as a general partner of Trinity. He may be served with process at 309 W. 7th Street, Suite 500, Fort Worth, Texas 76102, or at his residence at 1000 Henderson Street, Apartment 210, Fort Worth, Texas 76102, or wherever he may be found.

### III.      JURISDICTION AND VENUE

7.      This Court possesses personal and subject matter jurisdiction. Claims asserted arise under, among others, Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

8.      Jurisdiction is conferred by Section 27 of the Exchange Act (15 U.S.C. § 78aa and 28 U.S.C. § 1331). Defendants are Texas residents and Texas business entities, and each Defendant regularly conducts business in the State of Texas and engages in commerce in and has systematic contacts with the State of Texas. This action involves conduct by the parties in Texas, including services performed by Trinity and Dewoody and also an investment by Frigate.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), as Defendants Trinity and Castle Energy maintain their respective principal place of business in this District, DeWoody, Michael DeWoody, and Haggerty reside in this District, and all Defendants conduct substantial business here. This District is also where a substantial part of the events and/or omissions giving rise to the claims occurred. The negotiations between Frigate, Trinity, and DeWoody occurred in Dallas, Texas; Frigate negotiated and signed the Representation Agreement in Dallas, Texas; and Frigate paid the funds underlying the investment at issue in Dallas, Texas.

10.     In connection with these acts, omissions, conduct, and other wrongs alleged in the Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce.

### IV.    BACKGROUND AND BASES OF DEFENDANTS' LIABILITY

**A.    Trinity, through DeWoody, brokered Frigate's purchase of securities without registration and through material misrepresentations and omissions.**

      **a.    Frigate and Trinity execute a Representation Agreement.**

11.     On May 13, 2014, Frigate and Trinity, through DeWoody, executed a Representation Agreement, by which Frigate engaged Trinity as its broker in locating and purchasing oil and gas interests.

12.     Through the Representation Agreement, Trinity became Frigate's "exclusive agent to represent it in purchasing" certain "oil and gas interests" and agreed to use "its best efforts to represent [Frigate] in such respect."  Frigate relied upon Trinity and DeWoody – a partner in Trinity – to provide their expertise in locating, sourcing, and brokering oil and gas interests.

13.     As part of its brokerage services, Trinity, under the control of and assisted by DeWoody, put the deal together, including finding the overriding royalty interests and arranging for their sale and Frigate's purchase.  The Representation Agreement specifies that Trinity, as Agent, "has located certain properties," and that the oil and gas interests are set forth "in the Exhibit A" attachment.  The Exhibit A to the Representation Agreement shows the oil and gas interests derive from over one hundred (100) separate leases.

14.     Through the Representation Agreement, in exchange for Trinity brokering the purchase, Frigate agreed to pay (a) a carry of 3.5% in the oil and gas interests and revenues therefrom, and (b) a brokerage service fee equaling 4% of the gross purchase price that Frigate

paid for the oil and gas interests.  Frigate and Trinity further agreed that the oil and gas interests "shall be titled jointly" in both of their names to account for the carry.

      **b.**    **Trinity and DeWoody made misrepresentations and omissions, upon which Frigate relied.**

15.    Trinity and DeWoody made numerous representations and omissions to induce Frigate into entering the Representation Agreement and making the purchase effectuated through the Assignment.  They presented materials including paystubs that purported to show favorable royalties generated from the to-be-purchased overriding royalty interests.

16.    Specifically, on April 22, 2014, DeWoody e-mailed a "package" of materials that contained production and payment information for the units that would later be set forth in Exhibit A to the Representation Agreement.  The package included a "Production [by] Month" chart showing the alleged production volume over time, as well as various alleged checks and payment information supposedly pertaining to the units.  Through the e-mail, DeWoody stated "[i]f you guys don't like this deal, we would more than likely buy it in our fund(s)."  The e-mail further provided that "[t]here is considerable up-side drilling potential on this area."

17.    Further through the e-mail, DeWoody stated that "[a]t the approximate $8k per month evidenced on the check stubs . . . this investment would be returning approximately 16.78% yearly return day one[.]"

18.    Before entering into the Representation Agreement, affiliates of Frigate used the materials, representations, and numbers provided by Trinity and DeWoody to create a financial model to project expected future royalty payments and earnings.  The financial model included a sensitivity analysis to account for the effect of falling  oil prices on expected future royalty payments and earnings.  Based upon the materials provided and representations made by Trinity and DeWoody, Frigate felt comfortable entering into the Representation Agreement and making

the investment and purchase even after considering how the contingency of falling oil prices would affect the numbers provided.

19.    Based upon the materials provided and representations made by Trinity and DeWoody, Frigate reasonably expected to see a linear relationship between the rise and fall of oil prices, and the expenses attendant to the royalty payments to-be-received by Frigate.

20.    Frigate would not have executed the Representation Agreement or made its investment but for the representations and information that Trinity and DeWoody provided.

**c.    Frigate makes the investment as effectuated through the Assignment.**

21.    On or around May 14, 2014, Trinity and Frigate became parties to a Special Warranty Deed of Assignment of Overriding Royalty Interests (the "Assignment").  Through the Assignment, V.W. Hutson and Linda Hutson, as assignors, assigned numerous overriding royalty interests to Frigate (96.50% owner), Trinity (1.75% owner), and Charles Rivers Holdings, LLC (1.75% owner).  The Assignment assigned the oil and gas interests set forth in the Representation Agreement.

22.    As consideration for Trinity's services, Frigate paid $525,200 to Trinity covering the purchase price for the oil and gas interests as well as the brokerage fee.

**d.    Frigate discovers it was intentionally misled and induced.**

23.    Eventually, after the oil and gas interests were assigned to Frigate, the true picture emerged.  Many months transpired while Frigate waited on the paperwork to clear so it could receive royalty payments.  Frigate began receiving royalty payments in approximately October 2014.

24.    On or about January 22, 2016, Frigate discovered that Trinity and DeWoody likely misrepresented the true financials and production information for the oil and gas interests with the

intent to induce and defraud Frigate into making the purchase, causing Frigate to begin the process of investigating. Specifically, on or around January 22, 2016, Frigate noticed that even though the price of oil was falling, Frigate's expenses attendant to its royalties rose exponentially. As soon as Frigate noticed this variance, it immediately realized that it may have been induced into the purchase. On or around January 22, 2016, persons affiliated with Frigate sent an internal e-mail inquiring why the expenses contained material variances, and prompting an investigation into fraud and fraudulent inducement by Trinity and DeWoody.

25.    The nature of Trinity and DeWoody's fraud – by design – took time for Frigate to discover. This is because, among other things, the operator billing pertaining to the oil and gas interests that Frigate actually received was lacking in detail, opaque, and counterintuitive such that it was extremely difficult to tie the numbers.

26.    As the price of oil rebounded, the net amount received by Frigate did not. The royalty payments received by Frigate have been for amounts far less than it reasonably expected based upon the materials and representations that Trinity and DeWoody furnished beforehand. To date, Frigate has received limited royalty payments approximating $110,000 – far short of those represented by Trinity and DeWoody. The royalty payments actually received also differ substantially from the sensitivity analysis conducted before Frigate made its investment to account for the effect of falling oil prices on expected future royalty payments and earnings. Frigate's assumptions were flawed because Trinity and DeWoody intentionally and purposefully provided them false and incomplete information to induce its purchase.

**B.    Defendants violated of the Federal and Texas securities laws, among other wrongs.**

27.    The oil and gas interests that Trinity and DeWoody brokered for Frigate are fractional undivided interests in oil and gas. Pursuant to the terms of the Representation

Agreement, Frigate's interest in the overrides was itself fractionalized to account for Trinity's carry. These interests constitute "securities" under Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated thereunder, as well as under the Texas Securities Act.

28.     Trinity and DeWoody are sellers of, and participated in the sale of, the securities. They put together, sourced, and brokered the deal encompassing the sale of the overriding royalty interests to Frigate, served as Frigate's agent for the purchase, solicited an offer to buy the oil and gas interests, and negotiated and participated in the purchase of the oil and gas interests.

29.     Trinity, DeWoody, Castle Energy, Michael DeWoody, and Haggerty are not, and were not at the time of Frigate's purchase, registered with the Texas Securities Board or with the Financial Industry Regulatory Authority ("FINRA") as a dealer or agent. The transaction encompassing the sale of securities to Frigate is not exempt from registration.

30.     Castle Energy, DeWoody, Michael DeWoody, and Haggerty directly or indirectly controlled and/or aided and abetted Trinity, rendering them personally liable under both Federal and Texas securities laws. Moreover, Castle Energy, DeWoody, Michael DeWoody, and Haggerty each appears to be a general partner of Trinity and as such that are each personally liable for any and all damages arising from Trinity's conduct.

C.     <u>Additional scienter allegations/No safe harbor.</u>

31.     As alleged herein, Defendants acted with scienter in that they knew that the materials issued and representations made in the name of Trinity were materially false and misleading; knew that such materials and representations would be issued or disseminated to potential investors; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such materials and representations as primary violations of the federal securities laws. As set forth elsewhere herein, Defendants, by virtue of their receipt of information reflecting

the true facts regarding the oil and gas interests, their control over and/or receipt and/or modification of the materials and materially misleading misstatements and/or their associations with Trinity which made them privy to information concerning the oil and gas interests, participated in the fraudulent scheme alleged herein.

32.    Defendants knew and recklessly disregarded the falsity and misleading nature of the information they caused to be disseminated.  The fraud could not have been perpetuated or occurred without the knowledge and complicity of the personnel at the highest level of Trinity, including Castle Energy, DeWoody, Michael DeWoody, and Haggerty.

33.    Defendants had the motive and opportunity to perpetuate the fraud described herein because Defendants are the most senior persons at Trinity and had the opportunity to commit the fraud alleged herein.

34.    Moreover, the safe harbor provided for any forward-looking statements under certain circumstances does not apply to any of the allegedly false statements and representations pleaded in this complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward looking statement was false and/or that the forward-looking statement was authorized and/or approved by an officer of Trinity who knew that those statements were false when made.

## V.     CAUSES OF ACTION

**A.     Violation of Section 10(b) of the 1934 Act and Rule 10b-5 against Trinity and DeWoody.**

35.     Plaintiff incorporates the above paragraphs by reference.

36.     The oil and gas interests made basis of this lawsuit constitute securities for purposes of Section 10(b) of the 1934 Act and Rule 10b-5.

37.     Trinity and DeWoody located and put together the deal encompassing the sale of the overriding royalty interest purchased by Frigate.  In doing so, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38.     Trinity and DeWoody violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

    a.     Employed devices, schemes, and artifices to defraud;

    b.     Made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c.     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Frigate.

39.     This specifically includes providing paystubs and financial and production information that falsely and incompletely provided the economics and performance of the oil and gas interests that Trinity and DeWoody brokered for Frigate.

40.     Frigate has suffered damages in that, in reliance upon the statements and omissions by Trinity and DeWoody, it executed the Engagement Agreement and purchased the oil and gas

interests, only to later learn that the royalty payments it actually received materially contravened the materials and representations made by Trinity and DeWoody before Frigate made the investment. Frigate would not have executed the Representation Agreement or made its investment effectuated through the Assignment but the representations and information that Trinity and DeWoody provided.

41.    As a direct and proximate result of Defendants' wrongful conduct, Frigate suffered damages in connection with making its investment and purchasing the oil and gas interests.

42.    **Discovery Rule.**    Frigate timely asserts its claim for violations of Section 10(b) of the 1934 Act and Rule 10b-5 pursuant to 28 U.S.C. § 1658(b). Frigate discovered, or in the exercise of reasonable diligence could have discovered, the facts that constitute the violation beginning on or around January 22, 2016. This is because in January 2016, the expenses associated with the oil and gas interests began to exponentially escalate, prompting Frigate to question why the numbers made a drastic variance. On or around January 22, 2016, persons affiliated with Frigate sent an internal e-mail inquiring why the expenses contain material variances, and prompting an investigation into fraud and fraudulent inducement by Trinity and DeWoody. Thus, it was on or around January 22, 2016 that suggested to Frigate, as would be suggestive to a reasonable investor, that Trinity and DeWoody made misrepresentations and did so with intent to induce and defraud Frigate.

**B.    Violation of Section 20(a) of the 1934 Act and Rule 10b-5 against Castle Energy, DeWoody, Michael DeWoody, and Haggerty.**

43.    Plaintiff incorporates the above paragraphs by reference.

44.    Castle Energy, DeWoody, Michael DeWoody, and Haggerty each acted as a controlling person of Trinity within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level position, and their ownership and rights, participation in

and/or awareness of Trinity's operations and/or intimate knowledge of the representations and omissions made to Frigate, Castle Energy, DeWoody, Michael DeWoody, and Haggerty had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Trinity, including the content and dissemination of the various representations which Frigate contends are false and misleading.  Castle Energy, DeWoody, Michael DeWoody, and Haggerty had unlimited access to the material representations alleged by Frigate to be misleading prior to and/or shortly after the materials and representations were issued and made, and Castle Energy, DeWoody, Michael DeWoody, and Haggerty had the ability to prevent the issuance of the statements and representations or cause them to be corrected.

45.     In particular, Castle Energy, DeWoody, Michael DeWoody, and Haggerty had direct and supervisory involvement in the day-to-day operations of Trinity and, therefore, are presumed to have the power to control or influence the transaction giving rise to the securities violations as alleged herein, and exercised the same.

46.     As set forth above, Castle Energy, DeWoody, Michael DeWoody, and Haggerty violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint[1]. By virtue of their respective position as a controlling person, Castle Energy, DeWoody, Michael DeWoody, and Haggerty are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Castle Energy, DeWoody, Michael DeWoody, and Haggerty's wrongful conduct, Frigate suffered damages in connection with making its investment and purchasing the oil and gas interests.

C.     **Violations of the Texas Securities Act against all Defendants.**

47.     Plaintiff incorporates the above paragraphs by reference.

---

[1] Frigate incorporates the discovery rule allegations set forth in Section V(A) of the Complaint by reference.

48.     The oil and gas interests made basis of this lawsuit constitute securities under the Texas Securities Act.  Trinity and DeWoody located and put together the deal encompassing the sale of the overriding royalty interest purchased by Frigate.  In doing so, Trinity and DeWoody made untrue statements of material facts, and they also omitted material facts that were necessary to make the statements that they made not misleading.

49.     Trinity, Castle Energy, DeWoody, Michael DeWoody, and Haggerty are not registered with the Texas Securities Board as a dealer or agent, including at the time of Frigate's purchase.  The transaction encompassing the sale of securities to Frigate is not exempt from registration.

50.     Castle Energy, DeWoody, Michael DeWoody, and Haggerty directly or indirectly controlled and/or aided and abetted Trinity and are therefore jointly and severally liable for Trinity's conduct, individually and as Trinity's apparent general partner.

51.     Defendants' violations have resulted in Frigate incurring damages, and the Texas Securities Act imposes strict liability upon Defendants.  Frigate seeks recovery against Trinity, Castle Energy, DeWoody, Michael DeWoody, and Haggerty jointly and severally, for all damages and remedies available under the Texas Securities Act.  Frigate still possesses the oil and gas interests and therefore is entitled to the remedy of rescission among other possible remedies. Accordingly, Frigate is entitled to the return of the purchase price for its investment, plus pre-and post-judgment interest, costs, and the recovery of its reasonable attorneys' fees, which it seeks.

D.     **Common Law Fraud and/or Fraudulent Inducement against Trinity and DeWoody.**

52.     Plaintiff incorporates the above paragraphs by reference.

53.     Trinity and DeWoody's actions and omissions as described above also constitute fraud. Specifically, and without limitation, Trinity and DeWoody (individually and as an agent of

Trinity) made material misrepresentations of fact before the Representation Agreement was executed and the Assignment was effectuated. These representations and omissions were made with the intent to induce Frigate to execute the Representation Agreement and to proceed with the purchase effectuated through the Assignment, including ultimately purchasing the oil and gas interests at issue. Frigate would not have entered into the Representation Agreement or proceeded with the purchase and resulting Assignment had it not been for these material misrepresentations and omissions.

54.    These representations were wholly and completely false, and were made without privilege. Trinity and DeWoody knew or should have known that these representations whether by affirmative statements or through the presentation of information were false when made, or were made recklessly as positive assertions without knowledge of their truth.

55.    Trinity and DeWoody made these representations with the intent that Frigate act on them, and had reason to expect that Frigate would execute the Representation Agreement and proceed with the purchase in reliance upon their false representations.

56.    The representations were material because they influenced substantially Frigate's decision to execute the Representation Agreement and to proceed with purchasing the oil and gas interests. Frigate relied upon these representations to its detriment, and was lured and induced into entering into the Representation Agreement and to proceeding with the transaction to its detriment.

57.    Trinity and DeWoody's false representations and inducements have injured Frigate in an amount exceeding the minimum jurisdictional limits of this Court. Frigate's damages include, but are not limited to, the approximately $525,200 it expended to purchase the oil and gas interests. In addition, Trinity and DeWoody committed the foregoing acts with the kind of

willfulness, wantonness, fraud and/or malice for which the law allows the imposition of exemplary damages, for which Frigate sues.

58.     Frigate is entitled to its money damages, exemplary damages, and pre-and post-judgment interest and costs. Trinity and DeWoody are jointly and severally liable because each intended to, and did, make fraudulent material misrepresentations in order to induce Frigate to execute the Representation Agreement and proceed with the transaction effectuated through the Assignment.

**E.     Fraud by Nondisclosure/Omission against Trinity and DeWoody.**

59.     Frigate incorporates the above paragraphs by reference.

60.     Trinity and DeWoody concealed from and/or failed to disclose facts to Frigate.  The facts they concealed and/or failed to disclose include accurate paystubs as well as financial and production information that accurately and completely exhibited the economics and performance of the oil and gas interests.  These facts are material because Frigate wanted accurate and complete information in deciding whether to make its investment and therefore whether to purchase the oil and gas interests.

61.     Trinity and DeWoody had a duty to disclose the facts to Frigate, including but not limited to the true financial condition and performance of the oil and gas interests.

62.     Trinity and DeWoody knew that Frigate was ignorant of the facts, and that Frigate did not have an equal opportunity to discover the facts.  This is especially true given that Trinity and DeWoody had already provided the oil and gas interests to Frigate through the very Representation Agreement that Frigate signed.  Trinity and DeWoody were deliberately silent when they had a duty to speak.   One example is the April 22, 2014 e-mail, providing "[i]f you guys don't like this deal, we would more than likely buy it in our fund(s)."

63.     By failing to disclose the facts, Trinity and DeWoody intended to induce Frigate to execute the Engagement Agreement and proceed with the investment by purchasing the oil and gas interests.  Frigate relied upon Trinity and DeWoody's nondisclosure and/or omissions to its detriment.

64.     Frigate suffered injury as a result of acting without knowledge of the undisclosed facts.  Frigate is entitled to its money damages, exemplary damages, and pre-and post-judgment interest and costs. Trinity and DeWoody are jointly and severally liable because each intended to, and did, make fraudulent material misrepresentations to induce Frigate to execute the Representation Agreement and proceed with the transaction effectuated through the Assignment.

**F.     <u>Statutory Fraud against Trinity and DeWoody.</u>**

65.     Frigate incorporates the above paragraphs by reference.

66.     Pleading in the alternative, Frigate was a party to a transaction involving the purchase of real property – the overriding royalty interests.

67.     During the transaction, Trinity and DeWoody made false representations of fact and false promises to Frigate.  These include providing paystubs and financial and production information that falsely and incompletely provided the economics and performance of the oil and gas interests that Trinity and DeWoody brokered for Frigate.

68.     Trinity and DeWoody's false representations and false promises were material, and Trinity and DeWoody made them knowing they were false and for the purpose of inducing Frigate to enter into the Representation Agreement and to purchase the oil and gas interests effectuated through the Assignment.  Frigate justifiably relied on Trinity and DeWoody's promises by entering into the Representation Agreement and purchasing the oil and gas interests.

69.    Trinity and DeWoody's false promises proximately cause injury to Frigate, including actual damages.  Additionally, Trinity and DeWoody violated Section 27.01(c) of the Texas Business & Commerce Code with actual awareness of the falsity of their promises, entitling Frigate to exemplary damages.

70.    In addition to actual, consequential, and exemplary damages, Frigate seeks and is entitled to recover its costs of court, pre- and post-judgment interest, reasonable and necessary attorneys' fees, expert witness fees, and deposition-copy costs from Trinity and DeWoody pursuant to Section 27.01(c) of the Texas Business & Commerce Code.

**G.    Breach of Fiduciary Duty against all Defendants.**

71.    Frigate incorporates the above paragraphs by reference.

72.    Trinity, and also Dewoody, as an officer, director, agent, and/or general partner of Trinity, owed a fiduciary duty to Frigate.  Trinity, controlled and aided and abetted by DeWoody, served as Frigate's "exclusive" agent "to locate and assist it in purchasing certain oil and gas interests."   In fact, the Representation Agreement even defines Trinity as the "Agent" and Frigate as the "Princip[al]."   Trinity undertook to "use its best efforts to represent Princip[al] in such respect."  Among other duties, Trinity and DeWoody owed Frigate a duty of loyalty, a duty of fair, honest dealing, a duty of utmost good faith, a duty of full disclosure, and a duty to refrain from self-dealing.  This includes providing to Frigate accurate and complete information needed to decide whether to invest and therefore purchase the oil and gas interests.

73.    Trinity and DeWoody engaged in a series of actions purposefully and intentionally designed to induce Frigate into executing the Representation Agreement and into making the investment through the purchase of the oil and gas interests effectuated through the Assignment. This includes inflating the financial and production performance for the oil and gas interests, and

also providing paystubs and financial and production information that falsely and incompletely provided the economics and performance of the oil and gas interests that Trinity and DeWoody brokered for Frigate. Trinity and DeWoody have also benefitted from their conduct, since they maintain a carry in the oil and gas interests.

74. Trinity and DeWoody committed the aforementioned acts intentionally, so as to personally benefit at the expense of Frigate. Moreover, they committed the foregoing acts with the kind of willfulness, wantonness, and/or malice for which the law allows for the imposition of exemplary damages, for which Frigate sues.

75. Castle Energy, Michael DeWoody, and Haggerty aided and abetted Trinity and DeWoody's breach of fiduciary duty, including by assisting, encouraging, and participating in and with, and acting in concert with, Trinity and DeWoody. Castle Energy, Michael DeWoody, and Haggerty had knowledge of the breaches of fiduciary duty, and they intended to and actually assisted and/or encouraged Trinity and DeWoody. This assistance, encouragement, and/or participation was a substantial factor in causing the breaches of fiduciary duty. Castle Energy, Michael DeWoody, and Haggerty are also liable as general partners of Trinity.

76. Frigate seeks, and is entitled to, actual and exemplary damages relating to Defendants' breach of fiduciary duties, plus interest at the maximum rate provided by agreement of the parties of by law. Frigate is also entitled to, and requests, a full and complete accounting of all monies, earnings, and profits of any kind that Defendants have received relating to the breach of fiduciary duties. Frigate further requests the Court to order Defendants to disgorge any profits or other monies they have obtained as a result of the aforementioned conduct.

H.    **Civil Conspiracy against all Defendants.**

77. Frigate incorporates the above paragraphs by reference.

78.    Trinity, Castle Energy, DeWoody, Michael DeWoody, and Haggerty engaged in a civil conspiracy through their combination.

79.    The object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means.  Namely, to induce Frigate into executing the Representation Agreement and purchasing the oil and gas interests using false and incomplete materials and representations.

80.    Defendants had a meeting of the minds on the object and/or course of action.

81.    One or more members committed an unlawful, overt act to further the object and/or course of action.  Namely, Trinity and DeWoody committed fraud, fraud by nondisclosure, and breached their fiduciary duty, and Trinity, Castle Energy, DeWoody, Michael DeWoody, and Haggerty violated the federal and Texas securities laws and breached their fiduciary duty.

82.    As a proximate result of these wrongful acts, Frigate suffered injury.  In addition, Trinity, Castle Energy, DeWoody, Michael DeWoody, and Haggerty committed the foregoing acts with the kind of willfulness, wantonness, and/or malice for which the law allows the imposition of exemplary damages, for which Frigate sues.

83.    Frigate is entitled to its money damages, exemplary damages, pre- and post-judgment interest, and costs.  Defendants are jointly and severally liable.

## VI.    ATTORNEYS' FEES, COSTS, INTEREST

84.    Frigate is further entitled to recover its reasonable attorneys' fees and legal expenses through trial and appeal, if any, under applicable Federal and Texas law, including 15 U.S.C. §§ 78aa and 78t and 17 C.F.R. § 240.10b-5, Tex. Rev. Civ. Stat. art. 581-33(D), Tex. Bus. & Com. Code § 27.01, and any agreements between the parties.  In addition to recovery of legal expenses and attorneys' fees, Frigate is entitled to costs of Court and pre and post-judgment

interest at the maximum rate agreed to by the parties or permitted by law, and also to recover its expert witness fees and deposition-copy costs on its statutory fraud claim.

## VII.    JURY DEMAND

85.    Frigate demands a trial by jury.

## PRAYER

Plaintiff Frigate Enterprises, LLC respectfully requests the Court to cite Trinity Land and Minerals, LP, Castle Energy Services, LLC, Joseph P. DeWoody, Michael P. DeWoody, and Ryan M. Haggerty to appear, and to grant Plaintiff the following relief:

(1)    Actual and consequential damages as determined at trial on the merits;

(2)    Rescission through the Texas Securities Act claim;

(3)    Exemplary damages;

(4)    Costs of suit, including costs of Court and reasonable legal expenses and attorneys' fees, and also expert-witness fees and deposition-copy costs; and

(5)    Any such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated:  May 12, 2017                    Respectfully submitted,

                                                              /s/  Michael K. Hurst
                                                             Michael K. Hurst
                                                                State Bar No. 10316310
                                                                mhurst@lynnllp.com
                                                             Jonathan R. Childers
                                                                State Bar No. 24050411
                                                                jchilders@lynnllp.com
                                                             Nnamdi M. Anozie
                                                                State Bar No. 24087107
                                                                nanozie@lynnllp.com
                                                             **LYNN PINKER COX HURST, LLP**
                                                             2100 Ross Avenue, Suite 2700
                                                             Dallas, Texas 75201
                                                             Telephone: (214) 981-3800
                                                             Facsimile: (214) 981-3839
                                                             **ATTORNEYS FOR PLAINTIFF**
                                                             **FRIGATE ENTERPRISES, LLC**