# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **FRIGATE ENTERPRISES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:17-cv-01289-G** |
| | § | |
| **TRINITY LAND AND MINERALS, LP,** | § | |
| **CASTLE ENERGY SERVICES, LLC,** | § | |
| **JOSEPH P. DEWOODY, MICHAEL P.** | § | |
| **DEWOODY, RYAN M. HAGGERTY,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Frigate Enterprises, LLC ("Plaintiff" or "Frigate") files its *First Amended Complaint* against Trinity Land and Minerals, LP ("Trinity"), Castle Energy Services, LLC ("Castle Energy"), Joseph P. DeWoody ("DeWoody"), Michael P. DeWoody ("Michael DeWoody"), and Ryan M. Haggerty ("Haggerty") (collectively, "Defendants"), showing as follows:

## I.      SUMMARY OF CLAIMS

Plaintiff sues for violations of the Federal and Texas securities laws, as well as for claims of fraud/fraudulent inducement, fraud by nondisclosure, statutory fraud, breach of fiduciary duty, and civil conspiracy. This lawsuit arises out of Trinity and DeWoody brokering a sale of oil and gas interests as Frigate's "exclusive agent," which constituted unregistered securities, through a deal that Trinity and DeWoody located, brokered, and participated in. Trinity and DeWoody ignored their duty to "use best efforts to represent [Frigate]." Instead, they and the other Defendants made material misrepresentations and omissions to Frigate about the investment and

its financial and production performance with the intent to induce investment by intentionally misleading Frigate and purposefully withholding information that would have shown the true performance and value of the oil and gas interests.

## II.    PARTIES

1.      Plaintiff Frigate Enterprises, LLC ("Frigate") is a Texas limited liability company maintaining its principal place of business in Collin County, Texas.

2.      Defendant Trinity Land and Minerals, LP ("Trinity") is a Texas limited partnership maintaining its principal place of business in Tarrant County, Texas.  Trinity has been served by agreement of the parties.

3.      Defendant Castle Energy Services, LLC ("Castle Energy") is a Texas limited liability company maintaining its principal place of business in Tarrant County, Texas.  Castle Energy is listed as the general partner of Trinity.  Castle Energy has been served by agreement of the parties.

4.      Defendant Joseph DeWoody ("DeWoody") is a natural person and resident of Texas and appears to be listed as a general partner of Trinity and as manager and director of Castle Energy.  DeWoody has been served by agreement of the parties.

5.      Defendant Michael P. DeWoody ("Michael DeWoody") is a natural person and resident of Texas and appears to be listed as a general partner of Trinity and as manager and director of Castle Energy.  Michael DeWoody has been served by agreement of the parties.

6.      Defendant Ryan M. Haggerty ("Haggerty") is a natural person and resident of Texas and appears to be listed as a general partner of Trinity.  Haggerty has been served by agreement of the parties.

### III.   JURISDICTION AND VENUE

7.      This Court possesses personal and subject matter jurisdiction.  Claims asserted arise under, among others, Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

8.      Jurisdiction is conferred by Section 27 of the Exchange Act (15 U.S.C. § 78aa and 28 U.S.C. § 1331).  Defendants are Texas residents and Texas business entities, and each Defendant regularly conducts business in the State of Texas and engages in commerce in and has systematic contacts with the State of Texas.  This action involves conduct by the parties in Texas, including services performed and communications including e-mails and telephone calls conducted by Trinity and DeWoody, and also an investment by Frigate.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), as Defendants Trinity and Castle Energy maintain their respective principal place of business in this District, DeWoody, Michael DeWoody, and Haggerty reside in this District, and all Defendants conduct substantial business here.  This District is also where a substantial part of the events and/or omissions giving rise to the claims occurred.  The negotiations and many of the communications between Frigate, Trinity, and DeWoody occurred in Dallas, Texas; Frigate negotiated and signed the Representation Agreement in Dallas, Texas; and Frigate paid the funds underlying the investment at issue in Dallas, Texas.

10.     In connection with these acts, omissions, conduct, and other wrongs alleged in the Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including via e-mail and telephone calls.

## IV.    BACKGROUND AND BASES OF DEFENDANTS' LIABILITY

**A.**    **Trinity, through DeWoody, located and delivered the overriding royalty interest deal to Frigate.**

**a.**    **Trinity and DeWoody presented the oil and gas interests to Frigate.**

11.    In or about late March or early April 2014, Trinity, through DeWoody, met in person in Fort Worth, Texas, with Frigate's principal, Scott Ellington ("Ellington") to discuss royalty investment opportunities.  During this meeting, Trinity and DeWoody touted their record of accomplishment and involvement in the oil and gas industry, including how they had structured deals for other oil and gas investors in the greater Barnett Shale and were currently doing so, and what the investment returns looked like for royalty investments in the Barnett Shale based upon their track record and involvement in the particular area.  Trinity and DeWoody pitched that they were structuring royalty deals for other oil and gas investors in the greater Barnett Shale and could do so for Frigate.  Trinity and DeWoody characterized investing in oil and gas interests with them and in the Barnett Shale as an easy, passive investment strategy similar to "mailbox money," that was a safe and legitimate investment with a predictive guaranteed return.

12.    At the time of the in-person meeting, Trinity and DeWoody knew that the principal behind Frigate, Ellington, had never invested in oil and gas royalties, that he did not engage in oil and gas investments as his primary plan of business, and that he and his investment entity were necessarily relying upon Trinity and DeWoody's expertise in these areas for a proposed investment.  Frigate and its principal and affiliates utilized Trinity and DeWoody as Frigate's exclusive broker because they lacked the experience and expertise to locate, review, and make an appropriate investment themselves.

13.    Trinity and DeWoody directed the in-person meeting intending to close a deal with Frigate's principal, Ellington, as a successful proof of concept that could hopefully lead to Trinity

and Frigate brokering more investments with Ellington, Frigate, and their contacts in the future. Because Frigate's principal, Ellington, and affiliates had investment capabilities, including access to capital, but did not engage in the business of exploring for, producing, or selling oil and gas or mineral interests, they relied upon Trinity and DeWoody's representation of specialized expertise, experience, and track record for investing in the greater Barnett Shale.

14.    Trinity and DeWoody knew that Frigate and its principal lacked the expertise in oil and gas royalty investing, including in the Barnett Shale, to locate, evaluate, and purchase oil and gas interests without an expert in the business and in the area.  For this reason, Trinity and DeWoody knew and agreed that Trinity, through DeWoody, must serve as Frigate's "exclusive agent" and to "use its best efforts to represent" Frigate in locating, evaluating, and facilitating the purchase of oil and gas interests.  This knowledge and understanding formed a business relationship that preceded the execution of the formal Representation Agreement.  This relationship was a fiduciary one based upon a knowing and agreed-upon agency relationship.  In fact, Trinity, through DeWoody, agreed in writing that Trinity was the "agent" of Frigate, the "princip[al]."

15.    Following the meeting, Trinity and DeWoody presented Ellington and affiliates of Frigate with an oil and gas investment opportunity.

16.    On April 22, 2014, Trinity, through DeWoody, e-mailed a "package" of materials to affiliates of Frigate that contained oil and gas production and payment information for the units that would later be set forth in Exhibit A to the Representation Agreement and therefore constitute Frigate's investment.  The package included an "Oil and Gas Production" chart showing the alleged historical production volume over time, as well as various alleged paystubs and payment information supposedly pertaining to the units.  Specifically, DeWoody delivered to Frigate

materials including the following:  (1) an "Oil and Gas Production" logarithmic document purporting to show production volume for the oil and gas interests from October 2007 through April 2014; (2) two pages of paystubs from Canan Operating, Inc., which purported to show gas production/royalty payment information during the months of May, June, July, November, and December 2013; (3) statements from Enterprise Crude Oil, LLC, which purported to show crude oil production/royalty payment information during January 2014, and June, July, August, October, and December 2013; (4) statements from EOG Resources, Inc., which purported to show royalty payments for the oil and gas interests solely for the month of December 2013; and (5) production hub pages showing cumulative Oil and Casinghead Gas Production information for the oil and gas interests.  No other materials were provided.

> **b.  Trinity and DeWoody intentionally misrepresented the production and financial information and purposefully withheld information they knew Frigate needed to decide whether to invest.**

17.    In presenting the package of materials, Trinity and DeWoody intentionally engaged in misrepresentations and omissions to induce Frigate's investment.  Trinity and DeWoody purposely withheld information, including statements, paystubs, and other materials showing the oil and gas production and royalty payments for months of inferior and varying performance, including for months where expenses and deductions for the oil and gas interests moved disproportionally to revenues.  As explained below, the items that Trinity and Dewoody failed to disclose and withheld would have shown that the true performance and value of the oil and gas interests purchased by Frigate were drastically below the performance and value of the oil and gas interests as presented through the package of materials.

18.    Trinity and DeWoody are and were uniquely qualified and situated to have known, at the time they sent the package of materials on April 22, 2014, that expenses and deductions for

royalty interests pertaining to the Barnett Shale may and do move disproportionately to the rise or decline in revenues, such that expenses and deductions can increase as a percent of the gross revenue a royalty owner receives.  And, further, Trinity and DeWoody knew or should have been aware when they sent the package of materials that expenses and deductions may not correlate with the rise or fall of commodity pricing on a percentage of revenue basis.  Such knowledge and awareness is grounded in their touted experience and expertise in purchasing Barnett Shale oil and gas interests including royalties for their own funds, as well as in brokering the purchase and sale of Barnett Shale oil and gas interests including royalties for other potential investors.  This is especially true given that Trinity and DeWoody told Frigate and its principal that they were structuring deals for other investors seeking oil and gas interests in the greater Barnett Shale contemporaneously with their services for Frigate.

19.    Even though Trinity, through DeWoody, acted as Frigate's "exclusive agent" prior to, during, and following the execution of the Representation Agreement, Trinity and DeWoody did not explain any of the materials in the package to Frigate, Ellington, or any of their affiliates – whether in writing or orally – at any time before Frigate invested, other than through the short overview they provided in the body of the e-mail that conveyed the package.  And nothing in the e-mail conveying the package of materials instructed Frigate how to review and evaluate the materials provided, or explained why the materials were provided.  Trinity and DeWoody did not describe, tell, or explain how to read and review the materials, including how to read the statements and well production information provided, even though they knew that Frigate and its principal had never invested in oil and gas royalties.  Trinity and DeWoody had a duty to provide such description and explanation based upon, among other things: (a) their agency relationship with Frigate; (b) their duty to use their "best efforts to represent" Frigate; and (c) their known superior

experience, expertise, and informational advantage in oil and gas investing – including royalty investing.

20.    As such, Trinity and DeWoody knew or should have been aware that a wholesome explanation of how the proposed oil and gas investment worked needed to include a description and explanation of how the expenses and deductions impacted the net value of the proposed oil and gas investment, including how expenses and deductions would operate on a percentage of revenue basis, especially with consideration to rising or falling commodity prices.

21.    Further, although Trinity and DeWoody knew that Frigate and Ellington, its principal, had (a) never previously invested in oil and gas royalties, (b) did not possess specialized knowledge regarding royalty investments, and (c) had drastically inferior knowledge, access to information, and evaluation experience regarding oil and gas investments, Trinity and DeWoody failed to inform and explain to Frigate that the package of materials they provided could not substantiate accurate oil and gas production estimates and royalty payments without additional information and detail.  Trinity, through DeWoody, had a duty to so inform and explain because, in addition to the above-knowledge, Trinity, through DeWoody, agreed to serve as Frigate's "exclusive agent" and to use "best efforts" in the representation.

22.    Using "best efforts" cannot mean merely sending a package of materials through an e-mail without explanation, knowing the information conveyed is insufficient to ascertain the true performance and value of the oil and gas interests, to an investor lacking experience in oil and gas royalty investing including in the Barnett Shale.  Rather, it mandates a duty of full disclosure; of fair, honest dealing; of candor; and of loyalty and utmost good faith in acting on the principal's behalf.  Best efforts specifically include alerting the principal that an investment as represented is not indicative of actual performance and returns; here, that the package of materials was not

indicative of how the expenses and deductions affected the value of the oil and gas interests.  It was critical in this investment for Frigate to have been told that even though commodity prices may fall, Frigate's expenses attendant to its royalties may not move proportionately with the decline in revenues.  Trinity and DeWoody's failure to inform and disclose these facts renders the package of information and representations they made through the e-mail misleading precisely because Trinity and DeWoody knew that, regardless of commodity pricing, these undisclosed facts would not permit Frigate to realize the return of "$8k per month" and "16.78% yearly return day one" as represented and promised.

23.    Trinity and DeWoody knowingly and intentionally omitted to inform and disclose to Frigate and its principal and affiliates that the paystubs, statements, and production information were incomplete because assessing the true value and performance of the oil and gas interests required obtaining and reviewing additional information regarding the expenses and deductions that could materially alter the net value of the oil and gas interests.  Necessary additional materials to obtain and review included the following:  (a) the paystubs and statements for all months not provided (including paystubs for 2007 through April 2013, as well as August through September 2013, and January through March 2014); (b) crude oil production/royalty payment information for all months not provided (including for 2007 through May 2013, September and November 2013, and February and March 2014); (c) statements purportedly showing royalty payments for 2007 through November 2013 and January through March 2014; (d) operator sales price differentials; (e) type curve and decline behavior for the underlying wells; and (f) backup for expenses and deductions, including compression, dehydration, gathering, processing, treating, and marketing deductions.

24.     Despite such knowledge and/or awareness, Trinity and DeWoody knowingly and intentionally omitted to provide the above-information to Frigate, and/or at minimum, to inform and disclose to Frigate and its principal and affiliates that Frigate needed to obtain and review the above-information in deciding whether to invest, as such information needed to be considered in the calculus of deciding whether to proceed with investing.  They failed to inform and disclose despite having a duty to send Frigate all documents relating to the oil and gas interests and the closing of the investment.

25.     Trinity and DeWoody failed to inform and disclose in order to conceal negative information from Frigate that they knew would very likely cause Frigate to decide against proceeding with the investment.  Their failure to inform and disclose is fraudulent because they knew the package of materials was not indicative of how the expenses and deducts affected the value of the oil and gas interests, and disclosure would have alerted Frigate that the investment could not have achieved the returns as indicated in the package of materials and in the representations they made.  There is a substantial likelihood that disclosing these omitted facts would have been viewed by Frigate, as well other reasonable investors, as having significantly altered the mix of information available in evaluating the potential investment.  Namely, the information would be a materially negative attribute of the potential investment.  This is especially true given that Trinity and DeWoody articulated the investment to Frigate as a passive one with a predictive, guaranteed return, knowing that Frigate and its principal, Ellington, has no prior experience in oil and gas royalty investing including in the Barnett Shale.

26.     Additionally, at the time the package of materials was sent on April 22, 2014, Trinity and DeWoody knew or should have been aware that the package of materials did not accurately depict the fluctuating expenses and royalty statement deductions for the oil and gas

interests, and further, that fluctuating expenses and deductions – including their movement in proportion to revenues – could and did materially and negatively alter the net value of the oil and gas interests.  Further, Trinity and DeWoody knew and/or should have been aware that:  (a) divining the expenses and deductions, including their movement in proportion to revenues, is not intuitive and requires expertise and experience in oil and gas and royalty investments, which Frigate and its principal did not have; (b) no detail was provided in the package of materials concerning the expenses and the bases for the deductions that were listed; (c) the backup capable of explaining the expenses and deductions was not available from public sources, including through the Texas Railroad Commission; (d) the package of materials was not indicative of how the expenses and deducts affected the value of the oil and gas interests; and (e) regardless of commodity pricing, the undisclosed expenses and deductions model for the oil and gas interests would not permit Frigate to realize the return they represented and promised.

27.     Despite such knowledge and/or awareness, and despite being Frigate's "exclusive agent" using "best effots," Trinity through DeWoody knowingly and intentionally omitted to inform and disclose to Frigate and its principal and affiliates the omitted facts referenced above.  Trinity and DeWoody did so to conceal negative information from Frigate that they knew would likely cause Frigate to decide against proceeding with the investment.  This failure to inform and disclose is fraudulent because Trinity and DeWoody knew the package of materials was not indicative of how the expenses and deducts affected the value of the oil and gas interests, and disclosure would have alerted Frigate that the investment could not have achieved the returns as indicated in the package of materials and in the representations they made.  There is a substantial likelihood that disclosing these omitted facts would have been viewed by Frigate, as well other reasonable investors, as having significantly altered the mix of information available in evaluating

the potential investment. The information would be a materially negative attribute of the potential investment. This is especially true given that Trinity and DeWoody articulated the investment to Frigate as a passive one with a predictive, guaranteed return, knowing that Frigate and its principal, Ellington, has no prior experience in oil and gas royalty investing.

28.     Further, Frigate and DeWoody knew or should have been aware that fluctuations in expenses and deductions could have been observed and explained through the underlying drilling reports, well logs, production and disposition statements, type curve and decline behavior analyses, backup for expenses, adjustments, and deductions (including compression, dehydration, gathering, processing, treating, and marketing deductions) from the operators performing well operations on the leases tied to the oil and gas interests. Despite such knowledge and/or awareness, Trinity and DeWoody knowingly and intentionally omitted to inform and disclose to Frigate and its principal and affiliates, and/or to provide these documents to Frigate. They failed to inform and disclose despite having a duty to send Frigate all documents relating to the oil and gas interests and the closing of the investment.

29.     Trinity and DeWoody failed to inform, disclose, and provide the above-information and documents in order to conceal negative information from Frigate that they knew would likely cause Frigate to decide against proceeding with the investment. This failure to inform and disclose is fraudulent because Trinity and DeWoody knew the package of materials was not indicative of how the expenses and deducts affected the value of the oil and gas interests, and disclosure would have alerted Frigate that the investment could not have achieved the returns as indicated in the package of materials and in the representations they made. There is a substantial likelihood that disclosing these omitted facts would have been viewed by Frigate, as well other reasonable investors, as having significantly altered the mix of information available in evaluating the

potential investment. Notably, the information would be a materially negative attribute of the potential investment. This is especially true given that Trinity and DeWoody articulated the investment to Frigate as a passive one with a predictive, guaranteed return, knowing that Frigate and its principal, Ellington, has no prior experience in oil and gas royalty investing.

        **c.**    **Trinity and DeWoody did not make any cautionary statements or disclose any risk factors.**

30.    The package of materials provided by Trinity and DeWoody on April 24, 2014 contained no disclosure of risk factors at all, let alone a complete disclosure. Similarly, the package of materials was entirely devoid of any cautionary statements. Moreover, Trinity and DeWoody never identified any representations as a forward-looking statement. Trinity through DeWoody, as Frigate's "exclusive agent" for the oil and gas investment who agreed to use "best efforts," had a duty to do provide cautionary statements, to disclose risk factors, and to identify any forward looking statements, but did none of these things. Accordingly, the package of materials contained no disclosures or warnings that the value of the oil and gas interests could be materially affected by, among other things, fluctuations and variations in expenses and deductions, including their movement in proportion to revenues, and also that expenses and deductions could function in a non-linear way, such that when commodity prices fall, expenses could result in deductions that do not reduce in a manner proportional to revenues.

31.    Thus, even though Trinity, through DeWoody, served as Frigate's agent for the purchase of the oil and gas interests, Trinity and DeWoody provided no warnings – written or oral – including any warnings based on a realistic description of the risks applicable to the particular circumstances of the investment, and specifically that fluctuating expenses and deductions, as well as the movement of expenses and deductions in proportion to gains or declines in revenues, could negatively impact net value. Also significant, Trinity and DeWoody provided no warnings –

written or oral – that the production and financial information provided through the package of materials may not be typical for the oil and gas interests underlying the investment, or that the investment involves unknown risks and other factors that could cause actual results to be materially different from any future results expressed or implied by the package of materials and/or by Trinity and DeWoody's representations. Likewise, they provided no warnings – written or oral – that past performance of the underlying oil and gas interests may not be indicative of future returns.

32.     Similarly, Trinity and DeWoody failed to disclose risk factors endemic to the oil and gas business and oil and gas investing, and particularly to oil and gas royalty investing in the Barnett Shale, that might affect the investment's future economic performance and/or its ability to realize the value projected by Trinity and DeWoody. This includes their failure to disclose the risk that the value of the oil and gas interests could be materially affected by, among other things, fluctuations and variations in expenses and deductions, including their movement in proportion to revenues, and further, that expenses and deductions could operate in a non-linear way, such that when commodity prices fall, expenses could result in deductions that do not reduce in a manner proportional to revenues.

**d.     Trinity and DeWoody made a projection constituting a specific representation about present facts, albeit facts they knew were false and incomplete, while touting this projection to induce the investment.**

33.     Further through the April 24, 2014 e-mail, DeWoody stated that "[a]t the approximate $8k per month evidenced on the check stubs . . . this investment would be returning approximately 16.78% yearly return day one[.]" Of note, Trinity and DeWoody's representation concerning the investment return was tied solely to the package of materials they provided. The statement was false when made because Trinity and DeWoody knew or should have been aware that the projection was based upon extremely limited production and financial information without

any necessary backup for expenses and deductions, and that the extremely limited production and financial information comprising the package of materials sent did not typify the production and value of the oil and gas interests. Trinity and DeWoody were aware of the performance and value of the oil and gas interests from their experience and participation in other deals in the Barnett Shale and in brokering deals for other oil and gas investments in the area, as they represented to Frigate and its principal and affiliates. In fact, through this same e-mail, DeWoody stated that his funds "have been buying up there for years" and that "[i]f you guys don't like this deal, we would more than likely buy it in our fund(s)." Despite such knowledge and awareness, Trinity and DeWoody sent the e-mail and made the representation as a certainty to happen in the future, and even on "day one," if only Frigate would invest.

34.     Frigate's investment never came close to reaching such levels of return and DeWoody and Trinity knew at the time they made the statement that the oil and gas interests offered for purchase by Frigate would never achieve this return. In fact, Frigate would later learn that there were no set of circumstances through which the oil and gas interests could have performed as Trinity and DeWoody represented. To date, there has never been a month when Frigate made the $8,000 per month as Trinity and DeWoody stated it would make from "day one."

**e.     Trinity and DeWoody conveyed expertise, used their other deals to coerce Frigate's investment, and applied pressure tactics to induce the transaction.**

35.     Through the April 22, 2014 e-mail, DeWoody attempted to induce Frigate to invest by stating, "[i]f you guys don't like this deal, we would more than likely buy it in our fund(s)." Trinity and DeWoody further attempted to gain Frigate's trust and to convey their expertise in the buying area by representing that DeWoody's funds "have been buying up there for years." Frigate, as a reasonable investor, understood Trinity and DeWoody to mean that if Frigate did not proceed

with the investment, then its own broker and agent, in competition with it, would make the investment.  Thus, even though Trinity through DeWoody was Frigate's "exclusive agent" for the investment, Trinity and DeWoody coerced Frigate by threatening to compete directly against Frigate if Frigate did not proceed to invest.  Frigate's understanding was reasonable because Trinity and DeWoody stated they had other deals in the area, both through their own funds and by brokering for other investors.

36.     The e-mail further represented that "[t]here is considerable up-side drilling potential on this area."  Trinity and DeWoody never disclaimed this representation.  Instead, they endorsed it, stating "[w]e are huge fans of what EOG is doing in this part of the Barnett and have been buying up there for years."  Frigate justifiably relied upon this representation, reasoning that Trinity and DeWoody "have been buying up there for years" because "there is considerable up-side drilling[.]"

37.     In an effort to entice Frigate and pressure it to decide to invest, DeWoody also stated that the seller "is expecting an answer from me fairly quickly."

**f.      Trinity and DeWoody knew of and received and/or had access to information showing the true performance and value of the oil and gas interests, and intentionally withheld this information from Frigate.**

38.     As described above, Trinity, through DeWoody, delivered specific monthly paystubs, statements, and production information to Frigate, while withholding others.  The paystubs, statements, and production information that Trinity and DeWoody provided to Frigate depicted what they knew or should have been aware to be optimal performance and unusually favorable value of the oil and gas interests, and also that the package of materials was not indicative of how the expenses and deducts affected the value of the oil and gas interests.  They knew and

should have told Frigate that even though commodity prices may fall, Frigate's expenses attendant to its royalties may not move proportionately with the decline in revenues.

39.     Trinity and DeWoody provided the materials to induce Frigate into purchasing the oil and gas interests, and at the time, they knew or should have been aware that the true performance and value of the oil and gas interests was drastically below the performance and value of the oil and gas interests as presented through the package of materials, and that it also entailed undisclosed risk and potential for loss caused by expenses and deductions moving disproportionally with a decline in revenues. Yet they failed to inform and disclose these facts to Frigate.

40.     Additionally, Trinity and DeWoody knew and/or should have been aware but did not disclose that the information provided in the package of materials was incomplete, and that assessing the true performance and value of the oil and gas interests required additional information as described in Section IV(A)(b)-(d) above, including an explanation and breakdown of fluctuating expenses and deductions. The fluctuating expenses and deductions, including their movement in proportion to revenues, materially and negatively altered the net value of the oil and gas interests in ways known to Trinity and DeWoody but withheld from, and thereby incalculable by, Frigate. This information was undiscoverable to Frigate at the time and Frigate did not otherwise have access to it, which Trinity and DeWoody knew and/or should have been aware.

41.     Trinity and DeWoody knew and/or should have been aware that Frigate did not have access to and could not otherwise reasonably obtain the omitted information that was needed to decipher the true performance of the oil and gas interests. Knowing this, Trinity and DeWoody intentionally and knowingly withheld the relevant paystubs, statements, and production information from Frigate with the intent of inducing Frigate to purchase the oil and gas interests.

They did so to conceal negative information from Frigate that they knew would very likely cause Frigate to decide against proceeding with the investment.  Trinity and DeWoody knew and/or should have been aware that had they provided the information and made the disclosures set forth above, it would have significantly altered the mix of information available in evaluating the proposed investment, and it would have substantially increased the likelihood that Frigate would not invest.

> **g.**    **Frigate relied upon Trinity and DeWoody's material misrepresentations and omissions.**

42.    Frigate relied on the information presented by Trinity and DeWoody through the package of materials.  Frigate had access to capital but lacked the specialized knowledge and experience in oil and gas royalty investments and particularly in the Barnett Shale, as Trinity and DeWoody represented they had.  Frigate needed Trinity and DeWoody's skill, advice, and experience in order to locate and make an appropriate investment in the Barnett Shale.

43.    Before purchasing the oil and gas interests identified and presented by Trinity and DeWoody, affiliates of Frigate used the materials and representations provided by Trinity and DeWoody to create a financial model that projected expected future royalty payments and earnings.  The financial model included a sensitivity analysis to account for the effect of falling oil prices on expected future royalty payments and earnings.  Based upon the materials provided and representations made by Trinity and DeWoody, Frigate felt comfortable entering into the Representation Agreement and making the investment and purchase even after considering how the contingency of falling commodity prices would affect the numbers reflected in the financial information and data provided.  That is, based upon the information provided by Trinity and DeWoody, Frigate and its affiliates conducted an analysis of the expected earnings of the oil and gas interests even as impacted by falling commodity prices.

44.    Based upon the materials provided and representations made by Trinity and DeWoody, Frigate reasonably expected to see a linear relationship between the rise and fall of oil prices, and the expenses and deductions attendant to the royalty payments to-be-received by Frigate.  Based upon the information provided and representations made by Trinity and DeWoody, the natural inference of Frigate, as would be for a reasonable investor, is that returns after the investment will resemble those in the materials provided.  Frigate rightfully believed that it was being more than reasonable in proceeding to invest, because Trinity and DeWoody intentionally failed to disclose that the package of materials was incomplete, specifically including the impact of fluctuations and variations in expenses and deductions, and that expenses and deductions could operate in a non-linear way, such that when commodity prices fall, expenses could result in deductions that do not reduce in a manner proportional to revenues.

45.    Unbeknownst to Frigate, Trinity and DeWoody misrepresented the information they delivered to Frigate and omitted other information that would have revealed the true nature and earning potential of the oil and gas interests, such that it was impossible for Frigate to have performed true calculations and projections using the limited information that Trinity and DeWoody provided to them.  The damages and harm incurred by Frigate result from the movement of expenses in proportion to revenues, not from falling commodities prices.  It is not plausible that falling commodities pricing caused Frigate's loss, because Frigate had already accounted for this contingency through its sensitivity analysis.  What Frigate did not know was Trinity and DeWoody's fraud, which caused Frigate's loss.  Regardless of commodity pricing, under Trinity and DeWoody's undisclosed business model, Frigate never would have been able to receive the promised returns.  Frigate would never earn an $8,000 royalty payment in any month as represented by Trinity and DeWoody, and Trinity and DeWoody knew or should have been aware

that would be the case. Trinity and DeWoody knew and/or should have been aware that there were no circumstances under which the oil and gas interests it presented to Frigate would perform as represented. Time has proven them correct.

46.    Frigate would not have executed the Representation Agreement or made its investment but for the representations and information that Trinity and DeWoody provided, and also but for Trinity and DeWoody intentionally failing to disclose and providing the necessary information described above.

**B.    Trinity, through DeWoody, brokered Frigate's purchase of securities without registration and through material misrepresentations and omissions.**

**a.    Frigate and Trinity executed a Representation Agreement to memorialize their already existing relationship.**

47.    Based upon the misrepresentations discussed above, on May 13, 2014, Frigate and Trinity, through DeWoody, executed a Representation Agreement, by which Frigate memorialized that Trinity was its broker in locating and purchasing oil and gas interests and specifically those interests presented to Frigate by DeWoody via the April 22, 2014 e-mail.

48.    Through the Representation Agreement, Trinity confirmed that it had served and continued to serve as Frigate's "exclusive agent to represent it in purchasing" certain "oil and gas interests" and that it had agreed to use "its best efforts to represent [Frigate] in such respect." Frigate relied upon Trinity and DeWoody – a partner in Trinity – to provide their expertise in locating and brokering the oil and gas interests, as reflected through the Representation Agreement.

49.    The recitals in the Representation Agreement evidence that the Representation Agreement was executed to memorialize an already existing relationship. They provide that Trinity already "has located certain properties," and further, that "the Parties have entered into this Agreement to formalize the agreed on terms related to purchasing" the oil and gas interests. There

was already a business relationship and an agreed understanding between Frigate's principal and Trinity and DeWoody before the Representation Agreement was executed, which was memorialized through its execution.

50.    As part of its brokerage services, Trinity, under the control of and assisted by DeWoody, located the oil and gas interests, presented them to Frigate via e-mail on April 22, 2014, and arranged for their sale and Frigate's purchase.  The Representation Agreement specifies that Trinity, as Agent, "has located certain properties," and that the oil and gas interests are set forth "in the Exhibit A" attachment.  The Exhibit A to the Representation Agreement shows the oil and gas interests derive from over one hundred (100) separate leases.

51.    Through the Representation Agreement, in exchange for Trinity brokering the purchase, Frigate agreed to pay (a) a carry of 3.5% in the oil and gas interests and revenues therefrom, and (b) a brokerage service fee equaling 4% of the gross purchase price that Frigate paid for the oil and gas interests.  Frigate and Trinity further agreed that the oil and gas interests "shall be titled jointly" in both of their names to account for the carry.

**b.    Frigate made the investment as effectuated through the Assignment.**

52.    On or around May 14, 2014, Trinity and Frigate became parties to a Special Warranty Deed of Assignment of Overriding Royalty Interests (the "Assignment").  Through the Assignment, V.W. Hutson and Linda Hutson, as assignors, assigned numerous overriding royalty interests to Frigate (96.50% owner), Trinity (1.75% owner), and Charles Rivers Holdings, LLC (1.75% owner).  The Assignment assigned the oil and gas interests set forth in the Representation Agreement.

53.    As consideration for Trinity's services, Frigate paid $525,200 to Trinity covering the purchase price for the oil and gas interests as well as the brokerage fee.  Frigate thus purchased

the securities.  The oil and gas interests were not registered as securities.  The oil and gas interests are not exempt from registration.  Trinity, DeWoody, and the other Defendants are not, and were not at the time of Frigate's purchase, registered with the Texas Securities Board, the Financial Industry Regulatory Authority ("FINRA"), or the United States Securities and Exchange Commission ("SEC"), including as a dealer or agent.

### c.    Frigate discovered it was intentionally misled and induced.

54.    Eventually, after the oil and gas interests were assigned to Frigate, the true picture emerged.  Many months transpired while Frigate waited on the paperwork to clear so it could receive royalty payments.  Frigate began receiving royalty payments in approximately October 2014.

55.    From October 2014, through January 2016 Frigate received royalty payments that were substantially lower than the amounts represented by Trinity and DeWoody.  In fact, during the period (and to date), there has yet to be a month when Frigate made $8,000 per month as was represented by Trinity and DeWoody before Frigate invested.  As a result, Frigate contacted Trinity and DeWoody to inquire about the discrepancy between the earnings as represented by Frigate pre-investment, and Frigate's actual earnings after it invested.  Frigate experienced difficulty getting hold of Trinity and DeWoody when it attempted to contact them.  When they were able to connect, during each conversation after the investment, Trinity and DeWoody presented Frigate with excuses, assuring Frigate that the royalty payments were subject to an "administrative lag" by one or more of the operators of the leases and that Frigate would be receiving its due share as a catch-up through upcoming checks.

56.    Trinity and DeWoody also used their superior and specialized knowledge in oil and gas and royalties to dupe Frigate into believing that such delay in actualized payments was standard

business practice.  Never once during these conversations did Trinity or DeWoody inform Frigate that the reason Frigate was not achieving the earnings as represented was because actual expenses and deductions for the oil and gas interests – including their movement in proportion to revenues – detrimentally impacted their net value, in contrast to the package of materials they presented. Trinity and DeWoody thus continued to conceal and perpetrate their fraud even after Frigate invested.

57.    On or about January 22, 2016, Frigate discovered that Trinity and DeWoody likely misrepresented the true financials and production information for the oil and gas interests with the intent to induce and defraud Frigate into making the purchase, causing Frigate to begin the process of investigating.  Frigate discovered the fraud by noticing the movement of expenses in disproportion to the revenues it received, which was evident on this date.  In January 2016, a noticeable shift occurred where deductions as a percentage of gross revenue increased while the net income as a percentage of gross revenue plummeted.  Specifically, on or around January 22, 2016, Frigate noticed that even though the price of oil was falling, Frigate's expenses attendant to its royalties did not move proportionally with the decline in revenues.  As soon as Frigate noticed this variance, it immediately realized that it may have been fraudulently induced into the purchase. The sensitivity analysis that affiliates of Frigate conducted before making the investment had accounted for the effect of falling oil prices based upon the information that Trinity and DeWoody provided, and the persistence of the variance even when measured against the sensitivity analysis suggested fraud.  On or around January 22, 2016, persons affiliated with Frigate sent an internal e-mail to Frigate's principal, Ellington, inquiring why the expenses contained material variances, and prompting an investigation into fraud and fraudulent inducement by Trinity and DeWoody.

58.     The nature of Trinity and DeWoody's fraud – by design – took time for Frigate to discover.  This is because, among other things, the operator billing pertaining to the oil and gas interests that Frigate actually received differed substantially from the organized materials that Trinity and DeWoody presented to induce Frigate's investment.  The operating billing that Frigate actually received was undetailed, opaque, and counterintuitive such that it was extremely difficult to tie the numbers.  Moreover, as discussed above, Trinity and DeWoody did not reveal or discuss that the expenses and deductions as presented through the package of materials and their representations were not indicative of how expenses and deductions actually affected the value of the oil and gas interests.  Additionally, Trinity and DeWoody did not disclose that regardless of commodity pricing, under their undisclosed model for the oil and gas interests, Frigate would never have been able to receive the returns they represented and promised.

59.     Trinity and DeWoody concealed this information with the intention of inducing Frigate to purchase the oil and gas interests.  Trinity and DeWoody also intentionally concealed their fraud – even after Frigate invested – by telling Frigate that the subpar performance resulted from a supposed "administrative lag" by one or more of the operators.

60.     As the price of oil rebounded, the net amount received by Frigate did not.  The royalty payments received by Frigate have been for amounts far less than it reasonably expected based upon the materials and representations that Trinity and DeWoody furnished beforehand.  To date, Frigate has received limited royalty payments approximating $110,000 – far short of those represented by Trinity and DeWoody.  The royalty payments actually received also differ substantially from the sensitivity analysis conducted before Frigate made its investment to account for the effect of falling oil prices on expected future royalty payments and earnings.  Frigate's

assumptions were flawed because Trinity and DeWoody intentionally and purposefully provided them false and incomplete information to induce its purchase.

**C.     Defendants violated of the Federal and Texas securities laws, among other wrongs.**

61.     The oil and gas interests that Trinity and DeWoody brokered for Frigate are fractional undivided interests in oil and gas.  Pursuant to the terms of the Representation Agreement, Frigate's interest in the overriding royalty interests was itself fractionalized to account for Trinity's carry.  These interests constitute "securities" under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as under the Texas Securities Act.

62.     Trinity and DeWoody are sellers of, and participated in the sale and/or purchase of, the securities.  They located and brokered the deal encompassing the sale of the overriding royalty interests to Frigate, served as Frigate's agent for the purchase, solicited an offer to buy the oil and gas interests, and negotiated and participated in the purchase of the oil and gas interests.

63.     Trinity, DeWoody, Castle Energy, Michael DeWoody, and Haggerty are not, and were not at the time of Frigate's purchase, registered with the Texas Securities Board, FINRA, or the SEC, including as a dealer or agent.  The transaction encompassing the sale of securities to Frigate is not exempt from registration.

64.     Castle Energy, DeWoody, Michael DeWoody, and Haggerty directly or indirectly controlled and/or aided and abetted Trinity, rendering them personally liable under both Federal and Texas securities laws.  Moreover, Castle Energy, DeWoody, Michael DeWoody, and Haggerty each appears to be a general partner of Trinity and as such that are each personally liable for any and all damages arising from Trinity's conduct.

**D.     Additional scienter allegations/No safe harbor.**

65.     As alleged herein, Defendants acted with scienter in that each knew that the materials issued and representations made in the name of Trinity were materially false and

misleading; knew that such materials and representations would be issued or disseminated to potential investors including Frigate; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such materials and representations as primary violations of the federal securities laws.  As set forth elsewhere herein, Defendants, by virtue of their receipt of information reflecting the true facts regarding the oil and gas interests, their control over and/or receipt and/or modification of the materials and materially misleading misstatements and/or their associations with Trinity which made them privy to information concerning the oil and gas interests, participated in the fraudulent scheme alleged herein.

66.    Defendants knew and recklessly disregarded the falsity and misleading nature of the information they caused to be disseminated.  The fraud could not have been perpetuated or occurred without the knowledge and complicity of the personnel at the highest level of Trinity, including Castle Energy, DeWoody, Michael DeWoody, and Haggerty.  Additionally, Trinity and DeWoody intentionally withheld or otherwise failed to disclose material information to which they had access, including paystubs, statements, and production information pertaining to the oil and gas interests for months of inferior and varying performance, capable of showing the true performance of the oil and gas interests purchased by Frigate.

67.    Defendants had the motive and opportunity to perpetuate the fraud described herein because each Defendant is among the most senior persons at Trinity and had the opportunity to commit the fraud alleged herein.  Trinity and DeWoody's motive is further evidenced by their material misrepresentations and omissions, which were made to exaggerate the positive performance of the oil and gas interests, while deliberately hiding the poor performance of the interests, such that Frigate and its affiliates would not discover the true nature and earning potential of the interests until well after purchasing them.

68.    Moreover, the safe harbor provided for any forward-looking statements under certain circumstances does not apply to any of the allegedly false statements and representations pleaded in this complaint.  None of the specific statements pleaded herein was identified as a "forward-looking statement" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent the statutory safe harbor does apply to any forward-looking statements pleaded herein (it does not), Defendants are liable for those forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward looking statement was false and/or that the forward-looking statement was authorized and/or approved by an officer of Trinity who knew that those statements were false when made.

## V.    CAUSES OF ACTION

### A.    Violation of Section 10(b) of the 1934 Act and Rule 10b-5 against Trinity and DeWoody.

69.    Plaintiff incorporates the above paragraphs by reference.

70.    The oil and gas interests made basis of this lawsuit constitute securities for purposes of Section 10(b) of the 1934 Act and Rule 10b-5.

71.    Trinity and DeWoody located, brokered, and participated in the deal encompassing the sale of the overriding royalty interests purchased by Frigate.  In doing so, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

72. Trinity and DeWoody violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

    a.    Employed devices, schemes, and artifices to defraud;

    b.    Made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c.    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Frigate.

73. This specifically includes providing paystubs and financial and production information that falsely and incompletely provided the economics and performance of the oil and gas interests that Trinity and DeWoody brokered for Frigate, and also withholding paystubs and financial and production information that they knew would have revealed the poor performance of the oil and gas interests. This specifically includes:

    a.    failing to disclose that the package of materials provided was incomplete, specifically including the impact of fluctuations and variations in expenses and deductions, and that expenses and deductions could operate in a non-linear way, such that when commodity prices fall, this undisclosed expense structure would result in deductions that did not reduce in a manner proportional to revenues; and

    b.    making a false statement as to future earnings from the investment from "day one," because Trinity and DeWoody knew or should have been aware that the projection was based upon extremely limited production and financial information without any necessary backup for expenses and deductions, and that the extremely limited production and financial information comprising the package of materials sent did not typify the production and value of the oil and gas interests.

74. Frigate has suffered damages in that, in reliance upon the statements and omissions by Trinity and DeWoody, it executed the Engagement Agreement and purchased the oil and gas interests, only to later learn that the royalty payments it actually received materially contravened

the materials and representations made by Trinity and DeWoody before Frigate made the investment.   Frigate would not have executed the Representation Agreement or made its investment effectuated through the Assignment but for the representations and information that Trinity and DeWoody provided and the omissions that intentionally made.

75.    As a direct and proximate result of Defendants' wrongful conduct and omissions, Frigate suffered damages in connection with making its investment and purchasing the oil and gas interests.

76.    **Discovery Rule.**    Frigate timely asserts its claim for violations of Section 10(b) of the 1934 Act and Rule 10b-5 pursuant to 28 U.S.C. § 1658(b).  Frigate discovered, or in the exercise of reasonable diligence could have discovered, the facts that constitute the violation beginning on or around January 22, 2016.  This is because in January 2016, the expenses associated with the oil and gas interests began to move disproportionally with the decline in revenues Frigate was receiving, prompting Frigate to question why the numbers made a drastic variance.  Based upon the representations made by Trinity and DeWoody, Frigate believed that even with a decline in commodity prices, the deductions and/or expenses would correlate on a percentage of revenue basis.  For example, their expectation was that if the price of oil declined by one-half, the royalty interest revenue would also decline by one-half.  Frigate noticed that this was not the case.  On or around January 22, 2016, persons affiliated with Frigate sent an internal e-mail inquiring why the expenses contain material variances and declined non-linearly, prompting an investigation into fraud and fraudulent inducement by Trinity and DeWoody.  Thus, it was on or around January 22, 2016 that suggested to Frigate, as would be suggestive to a reasonable investor, that Trinity and DeWoody made misrepresentations and omissions and did so with intent to induce and defraud Frigate.

**B.    Violation of Section 20(a) of the 1934 Act and Rule 10b-5 against Castle Energy, DeWoody, Michael DeWoody, and Haggerty.**

77.    Plaintiff incorporates the above paragraphs by reference.

78.    Castle Energy, DeWoody, Michael DeWoody, and Haggerty each acted as a controlling person of Trinity within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level position, and their ownership and rights, participation in and/or awareness of Trinity's operations and/or intimate knowledge of the representations and omissions made to Frigate, Castle Energy, DeWoody, Michael DeWoody, and Haggerty had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Trinity, including the content and dissemination of the various representations which Frigate contends are false and misleading.  Castle Energy, DeWoody, Michael DeWoody, and Haggerty each had unlimited access to the material representations alleged by Frigate to be misleading prior to and/or shortly after the materials and representations were issued and made, and Castle Energy, DeWoody, Michael DeWoody, and Haggerty had the ability to prevent the issuance of the statements and representations or cause them to be corrected.

79.    In particular, Castle Energy, DeWoody, Michael DeWoody, and Haggerty had direct and supervisory involvement in the day-to-day operations of Trinity and, therefore, are each presumed to have the power to control or influence the transaction giving rise to the securities violations as alleged herein, and exercised the same.

80.    As set forth above, Castle Energy, DeWoody, Michael DeWoody, and Haggerty violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint[1]. By virtue of their respective position as a controlling person, Castle Energy, DeWoody, Michael DeWoody, and Haggerty are each liable pursuant to Section 20(a) of the Exchange Act.  As a

---

[1] Frigate incorporates the discovery rule allegations set forth in Section V(A) of the Complaint by reference.

direct and proximate result of Castle Energy, DeWoody, Michael DeWoody, and Haggerty's wrongful conduct, Frigate suffered damages in connection with making its investment and purchasing the oil and gas interests.

**C.    Violations of the Texas Securities Act against all Defendants.**

81.    Plaintiff incorporates the above paragraphs by reference.

82.    The oil and gas interests made basis of this lawsuit constitute securities under the Texas Securities Act.  Trinity and DeWoody located, brokered, and participated in the deal encompassing the sale of the overriding royalty interests purchased by Frigate.  In doing so, Trinity and DeWoody made untrue statements of material facts, and they also omitted material facts that were necessary to make the statements that they made not misleading, pursuant to the Texas Securities Act including TEX. REV. CIV. STAT. ANN. ART. 581-33(A)(2).

83.    Trinity, Castle Energy, DeWoody, Michael DeWoody, and Haggerty are not registered with the Texas Securities Board as a dealer or agent, including at the time of Frigate's purchase.  The transaction encompassing the sale of securities to Frigate is not exempt from registration.

84.    Castle Energy, DeWoody, Michael DeWoody, and Haggerty each directly or indirectly controlled Trinity pursuant to Article 581-33(F)(1).  Each of these Defendants exercised control over Trinity's operations, and further, by virtue of their high-level position, and their ownership and rights, participation and/or awareness of Trinity's operations and/or intimate knowledge of the representations and omissions made to Frigate, had the power to control the transactions and/or activities upon which the primary violation is predicated.  Therefore, they are each jointly and severally liable for Trinity's conduct, individually and as Trinity's apparent general partner.

85.    Further, Castle Energy, DeWoody, Michael DeWoody, and Haggerty each directly or indirectly and/or aided and abetted Trinity with the intent to deceive or defraud or with reckless disregard for the truth of the law, with general awareness of his/its role in the violation, pursuant to Article 581-33(F)(2).  They each are therefore jointly and severally liable for Trinity's conduct, individually and as Trinity's apparent general partner.

86.    Defendants' violations have resulted in Frigate incurring damages, and the Texas Securities Act imposes strict liability upon Defendants.  Frigate seeks recovery against Trinity, Castle Energy, DeWoody, Michael DeWoody, and Haggerty jointly and severally, for all damages and remedies available under the Texas Securities Act.  Frigate still possesses the oil and gas interests and therefore is entitled to the remedy of rescission among other possible remedies.  Accordingly, Frigate is entitled to the return of the purchase price for its investment, plus pre-and post-judgment interest, costs, and the recovery of its reasonable attorneys' fees, which it seeks.

**D.    Common Law Fraud and/or Fraudulent Inducement against Trinity and DeWoody.**

87.    Plaintiff incorporates the above paragraphs by reference.

88.    Trinity and DeWoody's actions and omissions as described above also constitute fraud.  Specifically, and without limitation, Trinity and DeWoody (individually and as an agent of Trinity) made material misrepresentations of fact before the Representation Agreement was executed and the Assignment was effectuated.  These representations and omissions were made with the intent to induce Frigate to execute the Representation Agreement and to proceed with the purchase effectuated through the Assignment, including ultimately purchasing the oil and gas interests at issue.  This specifically includes providing paystubs and financial and production information that falsely and incompletely provided the economics and performance of the oil and gas interests that Trinity and DeWoody brokered for Frigate, and also withholding paystubs and

financial and production information that would have revealed the poor performance of the oil and gas interests. This specifically includes:

    a.    failing to disclose that the package of materials provided was incomplete, specifically including the impact of fluctuations and variations in expenses and deductions, and that expenses and deductions could operate in a non-linear way, such that when commodity prices fall, this undisclosed expense structure would result in deductions that did not reduce in a manner proportional to revenues; and

    b.    making a false statement as to future earnings from the investment from "day one," because Trinity and DeWoody knew or should have been aware that the projection was based upon extremely limited production and financial information without any necessary backup for expenses and deductions, and that the extremely limited production and financial information comprising the package of materials sent did not typify the production and value of the oil and gas interests.

89.    Frigate would not have entered into the Representation Agreement or proceeded with the purchase and resulting Assignment had it not been for these material misrepresentations and omissions.

90.    These representations were wholly and completely false, and were made without privilege. Trinity and DeWoody knew or should have known that these representations whether by affirmative statements or through the presentation of information were false when made, or were made recklessly as positive assertions without knowledge of their truth.

91.    Trinity and DeWoody made these representations with the intent that Frigate act on them, and had reason to expect that Frigate would execute the Representation Agreement and proceed with the purchase in reliance upon their false representations.

92.    The representations were material because they influenced substantially Frigate's decision to execute the Representation Agreement and to proceed with purchasing the oil and gas

interests. Frigate relied upon these representations to its detriment, and was lured and induced into entering into the Representation Agreement and to proceeding with the transaction to its detriment.

93.     Trinity and DeWoody's false representations and inducements have injured Frigate in an amount exceeding the minimum jurisdictional limits of this Court. Frigate's damages include, but are not limited to, the approximately $525,200 it expended to purchase the oil and gas interests. In addition, Trinity and DeWoody committed the foregoing acts with the kind of willfulness, wantonness, fraud and/or malice for which the law allows the imposition of exemplary damages, for which Frigate sues.

94.     Frigate is entitled to its money damages, exemplary damages, and pre-and post-judgment interest and costs. Trinity and DeWoody are jointly and severally liable because each intended to, and did, make fraudulent material misrepresentations in order to induce Frigate to execute the Representation Agreement and proceed with the transaction effectuated through the Assignment.

**E.     Fraud by Nondisclosure/Omission against Trinity and DeWoody.**

95.     Frigate incorporates the above paragraphs by reference.

96.     Trinity and DeWoody concealed from and/or failed to disclose facts to Frigate. The facts they concealed and/or failed to disclose include accurate paystubs as well as financial and production information that accurately and completely exhibited the economics and performance of the oil and gas interests. This includes withholding paystubs, statements, and well performance information that would have revealed the poor performance of the oil and gas interests. In particular, among other omissions, failing to disclose that the package of materials provided was incomplete, including the impact of fluctuations and variations in expenses and deductions, and that expenses and deductions could operate in a non-linear way, such that when commodity prices

fall, this undisclosed expense structure would result in deductions that did not reduce in a manner proportional to revenues.

97.    These facts are material because Frigate wanted accurate and complete information in deciding whether to make its investment and therefore whether to purchase the oil and gas interests.

98.    Trinity and DeWoody had a duty to disclose the facts to Frigate, including but not limited to the true financial condition and performance of the oil and gas interests.

99.    Trinity and DeWoody knew that Frigate was ignorant of the facts, and that Frigate did not have an equal opportunity to discover the facts.  This is especially true given that Trinity and DeWoody had already provided the oil and gas interests to Frigate through the very Representation Agreement that Frigate signed.  Trinity and DeWoody were deliberately silent when they had a duty to speak.   One example is the April 22, 2014 e-mail, providing "[i]f you guys don't like this deal, we would more than likely buy it in our fund(s)," and through which they stated that the seller "is expecting an answer from me fairly quickly."

100.    By failing to disclose the facts, Trinity and DeWoody intended to induce Frigate to execute the Engagement Agreement and proceed with the investment by purchasing the oil and gas interests.  Frigate relied upon Trinity and DeWoody's nondisclosure and/or omissions to its detriment.

101.    Frigate suffered injury as a result of acting without knowledge of the undisclosed facts.  Frigate is entitled to its money damages, exemplary damages, and pre-and post-judgment interest and costs.  Trinity and DeWoody are jointly and severally liable because each intended to, and did, make fraudulent material misrepresentations to induce Frigate to execute the Representation Agreement and proceed with the transaction effectuated through the Assignment.

**F.     Statutory Fraud against Trinity and DeWoody.**

102.    Frigate incorporates the above paragraphs by reference.

103.    Pleading in the alternative, Frigate was a party to a transaction involving the purchase of real property – the overriding royalty interests.

104.    During the transaction, Trinity and DeWoody made false representations of fact and false promises to Frigate.  These include providing paystubs and financial and production information that falsely and incompletely provided the economics and performance of the oil and gas interests that Trinity and DeWoody brokered for Frigate.

105.    Trinity and DeWoody's false representations and false promises were material, and Trinity and DeWoody made them knowing they were false and for the purpose of inducing Frigate to enter into the Representation Agreement and to purchase the oil and gas interests effectuated through the Assignment.  Frigate justifiably relied on Trinity and DeWoody's promises by entering into the Representation Agreement and purchasing the oil and gas interests.

106.    Trinity and DeWoody's false promises proximately cause injury to Frigate, including actual damages.  Additionally, Trinity and DeWoody violated Section 27.01(c) of the Texas Business & Commerce Code with actual awareness of the falsity of their promises, entitling Frigate to exemplary damages.

107.    In addition to actual, consequential, and exemplary damages, Frigate seeks and is entitled to recover its costs of court, pre- and post-judgment interest, reasonable and necessary attorneys' fees, expert witness fees, and deposition-copy costs from Trinity and DeWoody pursuant to Section 27.01(c) of the Texas Business & Commerce Code.

**G.     Breach of Fiduciary Duty against all Defendants.**

108.    Frigate incorporates the above paragraphs by reference.

109.    Trinity, and also DeWoody, as an officer, director, agent, and/or general partner of Trinity, owed a fiduciary duty to Frigate.  Trinity, controlled and aided and abetted by DeWoody, served as Frigate's "exclusive" agent "to locate and assist it in purchasing certain oil and gas interests."  In fact, the Representation Agreement even defines Trinity as the "Agent" and Frigate as the "Princip[al]."  Trinity undertook to "use its best efforts to represent Princip[al] in such respect."  Among other duties, Trinity and DeWoody owed Frigate a duty of loyalty, a duty of fair, honest dealing, a duty of utmost good faith, a duty of full disclosure, and a duty to refrain from self-dealing.  This includes providing to Frigate accurate and complete information needed to decide whether to invest and therefore purchase the oil and gas interests.

110.    Trinity and DeWoody engaged in a series of actions purposefully and intentionally designed to induce Frigate into executing the Representation Agreement and into making the investment through the purchase of the oil and gas interests effectuated through the Assignment. This includes inflating the financial and production performance for the oil and gas interests, and also providing paystubs and financial and production information that falsely and incompletely provided the economics and performance of the oil and gas interests that Trinity and DeWoody brokered for Frigate.  Trinity and DeWoody have also benefitted from their conduct, since they maintain a carry in the oil and gas interests.

111.    Trinity and DeWoody committed the aforementioned acts intentionally, so as to personally benefit at the expense of Frigate.  Moreover, they committed the foregoing acts with the kind of willfulness, wantonness, and/or malice for which the law allows for the imposition of exemplary damages, for which Frigate sues.

112.    Castle Energy, Michael DeWoody, and Haggerty aided and abetted Trinity and DeWoody's breach of fiduciary duty, including by assisting, encouraging, and participating in and

with, and acting in concert with, Trinity and DeWoody.  Castle Energy, Michael DeWoody, and Haggerty had knowledge of the breaches of fiduciary duty, and they intended to and actually assisted and/or encouraged Trinity and DeWoody.  This assistance, encouragement, and/or participation was a substantial factor in causing the breaches of fiduciary duty.  Castle Energy, Michael DeWoody, and Haggerty are also liable as general partners of Trinity.

113.    Frigate seeks, and is entitled to, actual and exemplary damages relating to Defendants' breach of fiduciary duties, plus interest at the maximum rate provided by agreement of the parties or by law.  Frigate is also entitled to, and requests, a full and complete accounting of all monies, earnings, and profits of any kind that Defendants have received relating to the breach of fiduciary duties.  Frigate further requests the Court to order Defendants to disgorge any profits or other monies they have obtained as a result of the aforementioned conduct.

**H.    Civil Conspiracy against all Defendants.**

114.    Frigate incorporates the above paragraphs by reference.

115.    Trinity, Castle Energy, DeWoody, Michael DeWoody, and Haggerty engaged in a civil conspiracy through their combination.

116.    The object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means. Namely, to induce Frigate into executing the Representation Agreement and purchasing the oil and gas interests using false and incomplete materials and representations.

117.    Defendants had a meeting of the minds on the object and/or course of action.

118.    One or more members committed an unlawful, overt act to further the object and/or course of action.  Namely, Trinity and DeWoody committed fraud, fraud by nondisclosure, and

breached their fiduciary duty, and Trinity, Castle Energy, DeWoody, Michael DeWoody, and Haggerty violated the federal and Texas securities laws and breached their fiduciary duty.

119.    As a proximate result of these wrongful acts, Frigate suffered injury.  In addition, Trinity, Castle Energy, DeWoody, Michael DeWoody, and Haggerty committed the foregoing acts with the kind of willfulness, wantonness, and/or malice for which the law allows the imposition of exemplary damages, for which Frigate sues.

120.    Frigate is entitled to its money damages, exemplary damages, pre- and post-judgment interest, and costs.  Defendants are jointly and severally liable.

## VI.    ATTORNEYS' FEES, COSTS, INTEREST

121.    Frigate is further entitled to recover its reasonable attorneys' fees and legal expenses through trial and appeal, if any, under applicable Federal and Texas law, including 15 U.S.C. §§ 78aa and 78t and 17 C.F.R. § 240.10b-5, TEX. REV. CIV. STAT. art. 581-33(D), TEX. BUS. & COM. CODE § 27.01, and any agreements between the parties.  In addition to recovery of legal expenses and attorneys' fees, Frigate is entitled to costs of Court and pre- and post-judgment interest at the maximum rate agreed to by the parties or permitted by law, and also to recover its expert witness fees and deposition-copy costs on its statutory fraud claim.

## VII.    JURY DEMAND

122.    Frigate has demanded a trial by jury and has paid the appropriate fee.

## PRAYER

Plaintiff Frigate Enterprises, LLC respectfully requests the Court to grant Plaintiff the following relief:

(1)    Actual and consequential damages as determined at trial on the merits;

(2)    Rescission through the Texas Securities Act claim;

(3)    Exemplary damages;

(4)    Costs of suit, including costs of Court and reasonable legal expenses and attorneys'
fees, and also expert-witness fees and deposition-copy costs; and

(5)    Any such other and further relief, at law or in equity, to which Plaintiff may be
justly entitled.

Dated:  June 5, 2017                    Respectfully submitted,

                                         */s/  Michael K. Hurst*
                                        Michael K. Hurst
                                          State Bar No. 10316310
                                          mhurst@lynnllp.com
                                        Jonathan R. Childers
                                          State Bar No. 24050411
                                          jchilders@lynnllp.com
                                        Nnamdi M. Anozie
                                          State Bar No. 24087107
                                          nanozie@lynnllp.com
                                        **LYNN PINKER COX HURST, LLP**
                                        2100 Ross Avenue, Suite 2700
                                        Dallas, Texas 75201
                                        Telephone: (214) 981-3800
                                        Facsimile: (214) 981-3839

                                        **ATTORNEYS FOR PLAINTIFF
                                        FRIGATE ENTERPRISES, LLC**


                            **<u>CERTIFICATE OF SERVICE</u>**

        I certify that on June 5, 2017, a true and correct copy of the foregoing was served on all
counsel of record via the Court's ECF system and e-mail.

                                        */s/ Jonathan R. Childers*
                                        Jonathan R. Childers


                            **4852-6289-0570, v. 1-1718-7914, v. 2**